# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERRANCE WEED,<br>    Plaintiff<br><br>V.<br><br>PRUDENTIAL INSURANCE COMPANY OF AMERICA, STATE STREET BANK AND TRUST COMPANY GROUP LONG TERM DISABILITY PLAN,<br><br>    Defendants | CIVIL ACTION NO. 08-10969-NG |

## PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS

Pursuant to Fed. R. Civ. P. Rule 34, Plaintiff requests that defendant produce the following writings and things within their possession, custody or control, or the possession, custody or control of their representatives, agents, employees or attorneys for inspection and copying at Rosenfeld & Rafik, P.C. within thirty days of service.

### Definitions and Instructions

A. This request is governed by and incorporates by reference the Local Civil Rules of the U.S. District Court for the District of Massachusetts, with particular regard to discovery requests.

B. "Prudential" means defendant The Prudential Insurance Company of America, its committees, its predecessors, successors, parents or subsidiaries, affiliates, or segments or divisions, and its present or former employees, agents, attorneys, accountants, officers, directors, trustees, or trustees in bankruptcy.

1

C. "QME" means "Qualified Medical Examiners, Inc." its committees, its predecessors, successors, parents or subsidiaries, affiliates, or segments or divisions, and its present or former employees, agents, attorneys, accountants, officers, directors, trustees, or trustees in bankruptcy.

D. "LTD Plan" means the Long Term Disability Plan insuring the plaintiff.

E. In responding to this request, you are expected to comply with Local Civil Rule 26.2 for each document responsive to this request withheld pursuant to a claim of privilege or work product.

F. Unless otherwise specified, the relevant time period of this request is January 1, 2005, to present.

**Documents Requested**

1. All documents (including without limitation any Internet based resources) that evidence, record, reflect or refer to internal rules, regulations, guidelines, protocols, training manuals or other similar criterion of Prudential and/or the LTD Plan, including without limitation the "Group Disability Memorandum" and/or "Long Term Disability Manual" and/or "Claim Management Supports" and/or "Group Life & Disability Operations Memorandum" in effect from January 1, 2005, to the present, that: (i) were relied upon in making the benefit determination; (ii) were submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; and/or (iii) demonstrate compliance with administrative processes and safeguards designed to ensure and to verify that benefit claims determinations are made in accordance with

2

governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

2. All documents (including without limitation any Internet based resources) that evidence, record, reflect or refer to internal rules, regulations, guidelines, protocols, training manuals or other similar criterion of Prudential and/or the LTD Plan, including without limitation "Group Disability Memorandum" and/or "Long Term Disability Manual" and/or "Claim Management Supports" and/or "Group Life & Disability Operations Memorandum" in effect from January 1, 2005, to the present, with respect to: (a) the handling, processing and administration of long term disability claims; (b) the handling, processing and administration of appeals; (c) the definition of disability and the pre-existing condition limitation; (d) the hiring, retaining or commission of video surveillance; (e) the hiring, retaining or commissioning of outside medical or vocational professionals to perform physical examinations, functional capacity evaluations and/or document reviews; and (f) disabilities caused by plaintiff's specific ailments.

3. All documents that evidence, record, reflect or refer to contracts and correspondence (including without limitation emails and Lotus Notes) reflecting payments to, and all notes, reports, draft reports and raw data of, any in-house or third-party professional(s) who conducted, with respect to plaintiff: (a) a medical document review; (b) vocational or occupational study; (c) rehabilitation study; and/or (d) any other review or study.

4. All documents that evidence, record, reflect or refer to: (a) the services agreement (the "Services Agreement") by and between Prudential and any other firm (the "Third Party Firm") that arranged a third-party examination, review and/or study with respect to plaintiff; (b) marketing, promotional and/or sales documents of the Third Party Firm; (c)

3

the bidding and/or negotiations preceding the Services Agreement and any renewal of the Services Agreement; (d) reports ("Reports") of the Third Party Firm sent to Prudential during the years 2004 through 2008, including without limitation, those pertaining to performance reviews; claim administration; satisfaction of goals and objectives; effectiveness; turnaround time; profitability; utilization; the number of reviews performed; and the number of claims denied and/or granted; and (e) correspondence, notes, memorandums, emails, or documents of any kind, of Prudential pertaining to or responding to the Reports.

5. All documents pertaining to Prudential's relationship with QME from January 1, 2005 to the present, including without limitation:

   a) IRS 1099 form(s) regarding compensation paid by Prudential to QME;

   b) Instructions provided by QME to its participating physicians concerning writing reports concerning insurance claimants;

   c) Instructions provided by Prudential to QME regarding writing reports concerning Prudential's claimants;

   d) Correspondence between Prudential and QME concerning the Plaintiff;

   e) Information as to the number of claims referred by Prudential to QME;

   f) Information as to how much Prudential paid for each review;

   g) Information as to how many claims QME reviewers found the claimant not to be disabled; and

   h) Information as to the number of those claims denied by Prudential that were reviewed by QME.

6. All documents pertaining to Prudential's relationship with Dr. John LoCascio from January 1, 2005 to the present, including without limitation:

   a) Dr. LoCascio's personnel file, including performance reviews;

   b) Information as to how Dr. LoCascio was compensated and the exact amount of his compensation;

   c) Information as to the number of claims reviewed by Dr. LoCascio;

   d) Information as to the number of claims that Dr. LoCascio reviewed in which he found the claimant not disabled; and

   e) Information as to the number of those claims denied by Prudential that were reviewed by Dr. LoCascio.

7. Prudential's written criteria or standards for employee compensation, bonuses and awards.


Dated: December 8, 2008                             Respectfully submitted,


                                                    /s/ Mala M. Rafik
                                                    Mala M. Rafik (BBO No. 638075)
                                                    ROSENFELD & RAFIK, P.C.
                                                    44 School Street, Suite 350
                                                    Boston, MA 02108
                                                    (617) 723-7470

                                                    **ATTORNEY FOR THE PLAINTIFF**